IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| THOMAS E. WOODS, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | Civil Action No. 08-121 |
| | ) | Judge Ambrose |
| v. | ) | Magistrate Judge Bissoon |
| | ) | |
| SUPT. DAVID DIGUGLIELMO, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus filed by Thomas E. Woods be dismissed and that a certificate of appealability be denied.

### II. REPORT

Petitioner, Thomas E. Woods, was convicted in the Court of Common Pleas of Fayette County, Pennsylvania on February 6, 1997, of one count of First Degree Murder. He is presently serving a life sentence for that conviction.

Petitioner had a counseled direct appeal. The Superior Court of Pennsylvania affirmed the judgment of sentence on March 18, 1998, and Petitioner's petition for allowance of appeal was denied on August 5, 1998 (Doc. 18-5, pp. 21-22); Commonwealth v. Woods, 715 A.2d 509 (Pa. Super.), cert denied, 727 A.2d 131 (Pa. 1998).

Petitioner thereafter filed a Petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541, *et seq.*, on August 28, 1998, raising several claims. That petition was denied after a hearing, but the case was remanded for additional proceedings by the Superior Court on June 17, 2004 (Doc. 29-3, pp. 2-10). Petitioner filed an amended PCRA petition in the trial court, and a lengthy hearing was held. The trial court again denied PCRA relief and issued

an opinion dated September 7, 2005 (Doc. 29-6, pp. 1-22). The Superior Court affirmed the denial of PCRA relief on May 1, 2007 (Doc. 29-6, pp. 23-26). A subsequent petition for allowance of appeal was denied by the Supreme Court of Pennsylvania on November 20, 2007.

Petitioner now seeks habeas relief and presents the following claims in his petition:

1. Trial counsel rendered ineffective assistance by failing to object to the use of co-defendant Green's guilty plea being used as substantive evidence of Petitioner's guilt, or in failing to obtain a limiting instruction to the jury on the use of that guilty plea;

2. Petitioner has new evidence of actual innocence in that his co-defendant Green entered a "new guilty plea" two years after Petitioner's conviction that did not include a charge of conspiracy against Green, thereby providing additional evidence to support Plaintiff's claim that the shooting was accidental;

3. Trial counsel was ineffective for failing to object to the accomplice instruction given by the trial court with respect to Green's testimony;

4. Trial counsel was ineffective for failing to advise Petitioner that his notice of alibi could be used to impeach him when Petitioner decided to testify at trial that the shooting was accidental;

5. Trial counsel was ineffective for failing to present evidence supporting his defense of an accidental shooting in the nature of evidence of the victim's intoxication and gunpowder residue on the victim's hand;

6. Petitioner was denied discovery prior to trial;

7. The evidence was insufficient to establish guilt of First Degree Murder;

(Doc. 1, p. 1).

A. **Facts of the crime**

The trial court summarized the testimony at trial as follows:

> In the early morning hours of March 21, 1992, [Petitioner] and three other men, Alfred Riley, Jr., Herbert Green and George Lane, drove to the home of Leroy G. Durant, the victim, to purchase drugs. At the victim's house, either [Petitioner] or Green kicked in the back door and the defendant, Riley and Green entered the home. Riley testified that as he waited in the kitchen, he heard shots from an adjoining room that [Petitioner] had

> entered. Green testified that he and [Petitioner] went into the living room and found Durant asleep. Upon awakening, Durant questioned the men as to their identity and reason for being in his home. Words were exchanged between [Petitioner] and Durant, and they grabbed each other, with [Petitioner] throwing the victim down. Green then testified that [Petitioner] had a gun in his hand (which [Petitioner] admitted he was carrying) and shots were fired. [Petitioner] then shot Durant in the neck.

(Doc. 18-5, pp, 1-2). Durant bled to death from a single gunshot wound to the neck.

Prior to trial, Petitioner maintained to trial counsel that he was at his sister's home babysitting at the time of the murder, and trial counsel consequently filed a Notice of Alibi defense (Doc. 29-2, p. 2). During the trial, Herbert Green was called as witness by the prosecution and testified that Petitioner shot the victim during a struggle, and Petitioner decided to change his defense (Doc. 29-6, p. 6). Counsel specifically advised Petitioner not to testify in his own behalf, but Petitioner did so against counsel's advice (Id.).

**B.** **Legal Standards**

The Court will dispense with the normal analysis of exhaustion and procedural default because it is clear that the claims raised lack merit. See, Long v. Wilson, 393 F.3d 390, 403 (3d Cir. 2004) ("[T]he Supreme Court held that a court has the discretion, in the interests of comity and federalism, to decide whether justice would be better served by insisting that a claim be fully exhausted or by rejecting it if it is plainly lacking in merit.").

A federal court may not issue a writ of habeas corpus unless it concludes either: (1) that the state court's adjudication resulted in a decision that is "contrary to," or an "unreasonable application of," clearly established federal law as determined by the Supreme Court of the United States; or (2) the state court adjudication was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). "Under § 2254(d)(1)'s unreasonable application clause . . . a federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000). With respect to 28 U.S.C. § 2254(d)(2)'s "unreasonable determination of facts" clause, a petitioner must demonstrate that a reasonable fact-finder could not have reached the same conclusion given the evidence. If a reasonable basis existed for the factual findings reached in the state court, then habeas relief is not warranted. Campbell v. Vaughn, 209 F.3d 280, 290-91 (3d Cir. 2000), cert. denied, 531 U.S. 1084 (2001). Finally, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**C.     Analysis**

> **1.  Trial counsel rendered ineffective assistance by failing to object to co-defendant Green's guilty plea being used as substantive evidence of Petitioner's guilt, or in failing to obtain a limiting instruction to the jury on the use of that guilty plea.**

Co-defendant Herbert Green gave a statement to police implicating himself and Petitioner, and he entered into a plea bargain with the Commonwealth in exchange for his testimony at Petitioner's trial (Doc. 34-1, p. 1). The guilty plea was marked as an exhibit at trial, but it was not shown to the jury, nor was it sent out with the jury during its deliberations (Doc. 34-1, p. 7). Green changed certain aspects of his version of events at trial, and Green's "plea and statement were entered into evidence to impeach his testimony while he was on the stand" (Doc. 34-1, p. 2). More specifically, Green testified that he, Petitioner, and their companions, "went to get weed" (Doc. 29-6, p. 20). They entered the victim's house through an open door and, when Green and Petitioner entered the living room, the victim confronted Petitioner (Doc. 29-6, p. 21). During the ensuing struggle, Petitioner was placed in a headlock

4

by the victim and was thrown to the floor, and the victim and Petitioner were fighting for possession of a gun, but Petitioner "got his hand" away long enough "to take a shot in to the man's neck" (Doc. 29-6, p. 25). Green was cross-examined by the Commonwealth with a statement he had given to investigators a few days before trial because Green's prior statement made no mention that the victim placed Petitioner in headlock and threw him to the floor, or that the victim had his hand on the gun during the struggle (Doc. 29-6, pp. 45-46). Petitioner asserts that this use of Green's prior statements as "substantive evidence" of Petitioner's guilt was improper, and that trial counsel was ineffective for failing to object or to seek a limiting instruction.

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)). The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: 1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687. To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct. Strickland, 466 U.S. at 690.

The first prong of the Strickland test requires a defendant to establish that his or her attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the

defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689. The question is not whether the defense was free from errors of judgment, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place. Id.

The second prong requires a defendant to demonstrate that counsel's errors deprived him or her of a fair trial and the result was unfair or unreliable. Strickland, 466 U.S. at 689. To prove prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. Id.

Petitioner's use of the phrase "substantive evidence of guilt" and the need for a "limiting instruction" leads the Court to conclude that he is asserting a Confrontation Clause issue with respect to the use of Green's prior statements. In Bruton v. United States, 391 U.S. 123 (1968), the Supreme Court held that the Confrontation Clause is violated when a **non-testifying** co-defendant's statement is introduced at a joint trial, and that statement names the defendant as a participant in the crime charged, and is used as substantive evidence of the defendant's guilt. 391 U.S. at 134-37. Use of the statement in that situation deprives a criminal defendant of his right to confront his accuser.

Here, however, the Confrontation Clause is not implicated because Green actually testified and was asked to explain the prior inconsistent statements he made. See California v. Green, 399 U.S. 149, 164 (1970) ("The Confrontation Clause does not require excluding from evidence the prior statements of a witness who concedes making the statements, and who may be asked to defend or otherwise explain the inconsistency between his prior and his present version

of the events in question, thus opening himself to full cross-examination at trial as to both stories."). Therefore, trial counsel could not have been ineffective for failing to object to the use of Green's prior statement at trial, or for seeking a limiting instruction on the use of his prior statement, because any such objection would have been meritless. See, United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) (counsel not ineffective for failing to pursue meritless claim); Diggs v. Owens, 833 F.2d 439, 446 (3d Cir. 1987) (same).

> **2. Petitioner has new evidence of actual innocence in that his co-defendant Green entered a "new guilty plea" two years after Petitioner's conviction that did not include a charge of conspiracy against Green, thereby providing additional evidence to support Plaintiff's claim that the shooting was accidental.**

Petitioner explains that his claim rests upon his belief that the jury in his trial reviewed Exhibit 20, a copy of Green's guilty plea with the charging documents attached thereto. The first page of Exhibit 20 shows that Petitioner entered a guilty plea to "Criminal Homicide – 3rd Degree," "Burlgary" and "Criminal Conspriacy" (Doc. 34-4, p. 2). His plea was entered with the agreement that he would offer "truthful testimony" in Petitioner's case (Id.). Attached to the exhibit is the Criminal Information filed in Green's case charging him with, *inter alia*, conspiracy to commit "Criminal Homicide [and] Burglary" (Doc. 34-4, p. 3). From this exhibit, Petitioner argues, the jury could have inferred that Green pled guilty to conspiring with Petitioner to commit murder. Thus, in Petitioner's view, the jury at his trial improperly considered Green's guilty plea to conspiracy as evidence that Petitioner premeditated the murder, and as a means of rejecting Petitioner's claim that the shooting was accidental (Doc. 4, p. 21).

First, to the extent that Petitioner's claim that he has "new evidence" of innocence is presented as an independent ground for habeas relief, it is clear that such a claim, absent proof of

a separate constitutional violation, does not provide a basis for invoking the writ of habeas corpus. See Herrera v. Collins, 506 U.S. 390 (1993).

Second, even if Petitioner could tie his asserted "new evidence" to some constitutional violation, his claim is defeated because the jury in his case was not, as he insists, presented with evidence Herbert Green pled guilty to conspiring with Petitioner to commit murder. Exhibit 20 was marked as an exhibit at trial, but the exhibit was neither shown to the jury, nor was it sent out with the jury during deliberations (Doc. 34-1, pp. 7, 15-16) ("There was never any testimony as to the contents of the informations, or the informations themselves, attached to this exhibit."; ". . . the jury could not have known that Green's informations were attached to the plea agreement, or that the Defendant was listed as Green's co-conspirator . . . ."). This is a finding of fact that is binding on this Court, because Petitioner has not presented clear and convincing evidence that it is erroneous. Therefore, Petitioner is simply wrong when he asserts that the jury could have inferred a conspiracy to commit murder from Exhibit 20. Petitioner's claim does not warrant habeas relief.

### 3. Trial counsel was ineffective for failing to object to the accomplice instruction given by the trial court with respect to Green's testimony.

Under Pennsylvania law, the "testimony of an accomplice of a defendant, given at the latter's trial, comes from a corrupt source and is to be carefully scrutinized and accepted with caution." Commonwealth v. Corley, 816 A.2d 1109, 1114 (Pa.Super. 2003). The trial court gave an instruction concerning Green's testimony because Green pled guilty to being an accomplice in this case. Any objection by counsel would have lacked merit, and Petitioner is not entitled to relief on this claim. Sanders, supra; Diggs, supra.

### 4. Trial counsel was ineffective for failing to advise Petitioner that his notice of alibi could be used to impeach him when Petitioner decided to testify at trial that the shooting was accidental.

The PCRA court held an extensive hearing in this case, and took testimony from trial counsel and from Petitioner. The trial court found that trial counsel advised Petitioner not to take the stand in his own defense at trial, but that she did not inform him specifically that the Commonwealth would be able to cross-examine him with the Notice of Alibi that was filed on his behalf prior to trial (Doc. 29-6, p. 6). Petitioner asserts, as he must to meet the Strickland standard, that had he known he would be so impeached, he would have chosen not to testify, and that the outcome of trial would have been different.

The PCRA court found that Petitioner failed to establish prejudice from counsel's oversight. More specifically, the PCRA court noted that trial counsel repeatedly advised Petitioner not to testify "both before and after Green's testimony, but [Petitioner] ignored that advice." (Doc. 29-6, p. 12). Further, it was Green's testimony placing Petitioner at the scene that prompted Petitioner to change his defense. "Other than his own testimony, [Petitioner] had no other witnesses to present and bolster his self-defense theory." (Id.). The trial court specifically rejected Petitioner's assertion that he would have changed his mind had he been told about the chance that he would be impeached with his Notice of Alibi (Id.). The PCRA court concluded that Petitioner had not suffered prejudice.

To prove prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. Id. Here, the trial court found as a matter of fact that Petitioner would still have chosen to testify even if counsel told him about the impending impeachment.

9

This is a finding of fact that is presumed correct, and that Petitioner has not shown by clear and convincing evidence to be incorrect.

Further, Petitioner was placed at the scene of the crime by not just Green, but by the driver of the car that night, George Lane (Doc. 29-6, p. 14). Lane testified that Petitioner and Green forced him to drive to the house, that he saw Petitioner in possession of a handgun, and that he heard shots shortly after Petitioner entered the house (Id.). Petitioner's alibi defense was simply not viable, and he should have considered this prior to inventing that version of events. Petitioner could have chosen not to testify, or to present his alibi defense, or no defense at all, and in all events he has simply failed to establish a reasonable probability of a different outcome in light of the consistent testimony of his co-defendant and of the driver of the car. The state court's ruling that Petitioner failed to establish prejudice from counsel's alleged error is neither inconsistent with, nor an unreasonable application of, federal law. Petitioner is not entitled to relief on this claim.

### 5. Trail counsel was ineffective for failing to present evidence supporting his defense of an accidental shooting in the nature of evidence of the victim's intoxication and gunpowder residue on the victim's hand.

Petitioner next asserts that trial counsel should have presented a toxicology report showing that the victim was intoxicated at the time of the murder, and evidence that the victim had gunpowder on his hand. The PCRA court credited counsel's testimony at the PCRA hearing that "the toxicology report did not address the victim's rationality or propensity toward violence" and was irrelevant (Doc. 29-6, p. 18). Counsel also believed that a report showing gunpowder on the victim's hand was irrelevant (Id.). The PCRA court found that trial counsel had a reasonable basis for not presenting this evidence.

Clearly, the PCRA court erred in finding that the evidence was irrelevant. Evidence that the victim was intoxicated has some marginal relevance, but it is certainly not at all probative in that it does not establish that the victim was more likely to assault Petitioner. Likewise, evidence that the victim had gunpowder residue on his hand is consistent with Petitioner's testimony that he and the victim were struggling for the weapon, but it is equally consistent with Herbert Green's testimony that, despite the struggle, Petitioner was able to get his hand free and shoot the victim in the neck (Doc. 29-6, p. 25). It also is simply consistent with a shooting done at close range. In short, Petitioner presented his defense at trial and it was rejected. He has not shown a reasonable probability that the outcome would have been different had counsel presented the two items of evidence he identifies and, accordingly, his is not entitled to habeas relief on this claim of ineffective assistance.

### 6. Petitioner was denied discovery prior to trial.

In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that a prosecutor's refusal to disclose evidence which is both exculpatory and material violates a defendant's due process rights. Nonetheless, "[t]here is no general constitutional right to discovery in a criminal case, and Brady did not create one." Weatherford v. Bursey, 429 U.S. 545, 559 (1977). In this case, the trial court found as a matter of fact that the prosecutor turned over all of the information sought by defense counsel prior to trial, with the exception of some portions of the police report that were not discoverable (Doc. 18-5, p. 8). Petitioner has not presented clear and convincing evidence that this finding is incorrect, and the state court's ruling is neither contrary to nor an unreasonable application of federal law.[1]

---

[1]  Petitioner asserts that at trial he "surprised by the District Attorney with evidences [sic] and witnesses of which was [sic] prejudicial to Petitioner's trial defense and not disclosed to Petitioner prior to trial" (Doc. 4, p. 31). Thus, Petitioner seems to be making the entirely

## 7. The evidence was insufficient to establish guilt of First Degree Murder.

Where a habeas petitioner challenges his incarceration on the ground that the evidence was insufficient to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Under this standard, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. A federal court must apply this standard "'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" Orban v. Vaughn, 123 F.3d 727, 731 (3d Cir. 1997) (quoting Jackson, 443 U.S. at 324 n.16). The finder of fact, however, weighs the evidence and the federal courts must defer to its resolution of conflicts in the evidence. Jackson, 443 U.S. at 326.

The test for sufficiency of evidence is the same under both Pennsylvania and federal law. See Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1233 (3d Cir. 1992), cert. denied, 506 U.S. 1089 (1993). Under Pennsylvania law, an appellate court must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offenses charged. Commonwealth v. Bricker, 525 Pa. 362, 581 A.2d 147 (1990). The state trial court applied this standard in addressing Petitioner's challenge to the sufficiency of the evidence (Doc. 18-5, 3-4). More specifically, Pennsylvania law requires a finding of a

---

baseless assertion that he was entitled to discover all of the **incriminating** evidence against him prior to trial.

specific intent to kill to support a conviction of first degree murder. 715 A.2d at 1091. "The specific intent to kill can be inferred from the defendant's use of a deadly weapon upon a vital part of the victim's body." Id.

The trial court noted that the jury was free to infer a specific intent to kill from the fact that Petitioner shot the victim in the neck, and that the jury was also free to reject Petitioner's testimony that the shooting was accidental (Doc. 18-5, pp. 5-6). The trial court's analysis is neither contrary to nor an unreasonable application of federal law, and Petitioner is not entitled to relief on this claim.

**B.    Certificate of Appealability**

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). Because Petitioner has not made such a showing, a certificate of appealability should be denied .

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C) and Local Rule 72.D.2, objections to this report and recommendation shall be filed on or before August 30, 2010. Failure to timely file objections may constitute a waiver of any appellate rights.

Dated: August 16, 2010                             s/Cathy Bissoon
                                                   Cathy Bissoon
                                                   United States Magistrate Judge


cc:
**THOMAS E. WOODS**
DE 4522
SCI Huntingdon
1100 Pike Street
Huntingdon, PA 16654-1112